# EXHIBIT D
## (TO FOREST CITY'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11)

IN ARBITRATION
STATE OF NEW MEXICO

FOREST CITY NM, LLC, a New Mexico limited liability company,

Claimant,

v.

COVINGTON NM, LLC, a Nevada limited liability company,

Respondent

---

## NOTICE OF INTENT TO ARBITRATE

---

Claimant, Forest City NM, LLC ("FCNM" or "Claimant"), by and through counsel and pursuant to the Operating Agreement of FC Covington Manager, LLC, as amended ("Operating Agreement") (attached as Exhibit A), hereby invokes and initiates arbitration of the disputes summarized in FCNM's written request for mediation, dated July 3, 2014, and as prescribed below.

### SUMMARY OF DISPUTES AND CLAIMS

1.  FCNM invokes arbitration to enforce the obligations of Covington NM, LLC ("Covington" or "Respondent") pursuant to the Buy-Out provisions of the Operating Agreement (Section 14.10), including Respondent's obligation for specific performance of said obligations, and to recover damages under New Mexico law for Respondent's bad faith breach of contract and/or malicious abuse of process respecting terms of, and duties and obligations prescribed by the Operating Agreement.

### PARTIES

2.  Claimant is a New Mexico limited liability company and one of two Members of FC Covington Manager, LLC ("FCC Manager"), a New Mexico limited liability company formed pursuant to the laws of the State of New Mexico and the Operating Agreement. FCNM is the owner of a fifty percent (50%) interest in FCC Manager.

3.  Respondent Covington is a Nevada limited liability company and the other Member of FCC Manager. Covington is owner of the remaining fifty percent (50%) interest in FCC Manager.

4.  FCC Manager has as its principal purpose management and operation of Mesa Del Sol, LLC, an entity which owns and controls all aspects of a real estate development project in southwest Albuquerque, New Mexico known as the Mesa del Sol Project.

## JURISDICTION AND VENUE

5. FCNM and Covington entered into the Operating Agreement effective September 26, 2006. The Operating Agreement has been amended in writing on two separate occasions: by instrument dated September 30, 2008, and a second instrument dated April 30, 2013. The Operating Agreement provides for and requires arbitration of disputes between the Members upon terms prescribed at Section 14.8 and 14.9 of said Agreement; and arbitration, as prescribed by the Operating Agreement, is the exclusive remedy of the Members for dispute resolution except with respect to resolution of a Deadlock (as that term is defined in the Operating Agreement) unless the Members agree to arbitration of a Deadlock. The primary method for resolution of a Deadlock is the Buy-Out process prescribed at Section 14.10 of the Operating Agreement.

6. New Mexico strongly favors enforcement of arbitration agreements, has adopted the Revised Uniform Arbitration Act, and has consistently enforced the rights of parties to a contract establishing arbitration of disputes as an exclusive remedy of the parties. *See Durham v. Guest*, 2009-NMSC-007, ¶ 32, 145 N.M. 694; NMSA 1978, §§ 44-7A-1 to -32 (2001).

7. The Operating Agreement explicitly provides that arbitration of disputes shall be conducted and heard by a designated arbitrator at a location within the state of New Mexico, and in accord with the New Mexico Rules of Civil Procedure and Rules of Evidence [except as otherwise prescribed in the Operating Agreement].

8. Criteria and methodology for selection of the arbitrator are prescribed in the Operating Agreement. The prescribed scope of arbitrator authority, and the limited rights of Members to appeal an arbitration determination, are also set forth in the Operating Agreement.

9. Claimant FCNM has given notice to Covington of FCNM's request for mediation as required by the Operating Agreement, by letter dated July 3, 2014 (attached as Exhibit B); but Respondent has failed and refused to resolve these disputes in the course of mediation, and the period prescribed for mediation (ten (10) business days) has expired. Claimant FCNM has therefore, by this Notice, timely and properly invoked arbitration as authorized by the Operating Agreement.

## ALLEGATIONS OF FACT

10. Terms of the Operating Agreement are plain and clear respecting obligations of the Members whenever disputes may occur, and are, in relevant part, as follows:

a. "Any dispute between the Members with respect to this Agreement will be subject to a ten (10) business day time period for mediation pursuant to this Agreement prior to invoking any other dispute resolution procedures set forth hereunder . . . the aggrieved party shall provide a written summary of the item or matter in dispute to the other party or Member via facsimile. Thereafter, the parties shall meet, including meetings telephonically, to discuss and to attempt to resolve the matter in a reasonable manner given the purposes of the Company and the provisions of this Agreement. If the parties are unable to reach an acceptable solution with respect to the matter in dispute, after the ten (10) business day time period, the parties shall be free to invoke arbitration pursuant to Section 14.9 **or** Buy-Out pursuant to Section 14.10, as applicable, it being agreed that the Buy-Out provision is only available for a Deadlock (as hereinafter defined) and that the arbitration is available for all other disputes and for a Deadlock if the Members so agree." [Section 14.8] [emphasis added].

b. "Any dispute between the Members with respect to any matter pertaining to this Agreement . . . which is not otherwise subject to buy-out pursuant to Section 14.10, shall be resolved by arbitration pursuant to this Section 14.9 . . . ." [Section 14.9(a)] [emphasis added]. and

c. "If the Members fail to approve by unanimous vote any matter reserved to the Members which matter is material to the operations or financial condition of the Company or if there is a failure to agree on any major decision including any failure to agree by the co-Managers over any material matter (hereinafter a "Deadlock"), and such matter is not resolved by mediation pursuant to Section 14.8 hereof, the following provisions will apply: . . . Any Member . . . shall be entitled to give written notice to the other Member(s) that the Buy/Sell Offeror is making an offer (the "**Buy/Sell Offer**") to the other Member(s) . . . to either (a) purchase with cash (or on terms . . .), for a designated price determined in accordance with the terms of this Section (the "**Designated Price**"), all (but not less than all) of the Interest of the Offeree Member, or (b) sell for cash or on terms . . . for the same Designated Price . . . to the Offeree Member all, but not less than all, of the Buy/Sell Offeror's Interest. . . . If within thirty (30) days after receipt of notice of the Buy/Sell Offer, the Offeree Member has not irrevocably elected by written notice to purchase the Buy/Sell Offeror's Interest at the Designated Price (and on the terms specified in the Buy/Sell Offer, if applicable), then the Offeree Member shall be deemed to have irrevocably elected to sell its Interest to the Buy/Sell Offeror at the Designated Price (and on the terms specified in the Buy/Sell Offer, if applicable)." [Sections 14.10 and 14.10.1] [emphasis added].

11.   After delivery of a notice of dispute to Covington on April 15, 2014 (attached as Exhibit C), FCNM invited mediation of the disputes identified in its April 15 letter.

12. After expiration of a ten (10) business day mediation period wherein Covington refused to pursue an acceptable solution to the disputes, and on May 5, 2014, FCNM submitted a Buy/Sell Offer to Covington. The FCNM Buy/Sell Offer (attached as Exhibit D) proposed sale of all of FCNM's "Interest" (defined per the Operating Agreement) in FCC Manager for a Designated Price and upon the terms as specified in the May 5 letter. The Designated Price prescribed in the Buy/Sell Offer was determined in accord with Section 14.10.1 of the Operating Agreement.

13. Covington did not, within thirty (30) days after receipt of the Buy/Sell Offer, irrevocably elect to purchase FCNM's Interest at the Designated Price and on the terms specified in the Buy/Sell Offer.

14. On June 11, FCNM gave written notice to Covington that, because Covington had not irrevocably accepted the May 5 Buy/Sell Offer within thirty (30) days of receipt, Covington was deemed by the Operating Agreement to have irrevocably elected to sell its Interest in FCC Manager to FCNM, at the Designated Price and upon the terms specified in the May 5 letter. By its June 11 letter (attached as Exhibit E), FCNM further advised Covington that, pursuant to Section 14.10.3 of the Operating Agreement, and as Purchaser under the Operating Agreement, FCNM was providing at least fifteen (15) days prior written notice of the date for Closing of the Buy-Out transaction. The prescribed Closing date was June 27, 2014. In the same June 11 letter, FCNM requested that Covington, as the "selling Member", provide FCNM with the form of written assignment of Member Interest proposed for Closing, in accord with Section 14.10.3 of the Operating Agreement, to allow FCNM's determination whether the form of proposed written assignment was reasonably acceptable to FCNM.

15. Prior to delivery of the June 11 letter, on June 9, 2014, FCNM representatives received a letter from W. Spencer Reid (of Keleher & McCleod, a law firm which previously represented FCC Manager). Mr. Reid announced by the letter (attached as Exhibit F) his representation of Covington and thereafter set forth three reasons why Covington "rejected" the May 5 Buy/Sell Offer. Mr. Reid also announced Covington's request for "mediation pursuant to 14.8 of the First Amendment", and notified FCNM that "Covington anticipates invocation of the arbitration provisions of Section 14.9".

16. Thereafter, by letter dated June 17, 2014, and in overt disregard of the mediation requirements of the Operating Agreement, counsel for Covington transmitted Covington's Notice of Intent to Arbitrate Dispute and Arbitration Demand (attached as Exhibit G).

17. On June 27, 2014, the undersigned law firm, on behalf of FCNM, notified Mr. Reid, as counsel for Covington, that his Notice and Demand for Arbitration dated June 17, 2014 was a direct violation of the plain language of the Operating Agreement, which precludes arbitration of matters related to a Deadlock without the permission of both Members. The June 27 letter (attached as Exhibit H) expressly notified Covington of the refusal of FCNM to permit, agree or consent to the arbitration of issues related to the Deadlock or the May 5 Buy/Sell Offer, and of FCNM's intent to fully comply with the Buy-Out process prescribed in the Operating Agreement and commenced by FCNM's Buy/Sell Offer of May 5. The June 27 letter further advised Covington that FCNM was prepared to meet all obligations as Purchaser under the

Operating Agreement for the scheduled Closing of a Buy-Out transaction. The June 27 letter also advised Covington that FCNM, as a Non-Defaulting Member under the Operating Agreement, would exercise all of its rights at law or in equity to enforce the performance obligations of Covington.

18.     By letter dated July 1, 2014 (attached as Exhibit I), FCNM gave formal notice to Covington that, because Covington had failed to perform its obligations as selling Member on the designated Closing date (June 27, 2014), Covington was in default of its obligations to close a Buy-Out transaction as prescribed in the Operating Agreement. FCNM further advised that, as a Non-Defaulting Member, FCNM reserved its rights to pursue remedies at law or in equity relating to Covington's default and failures of performance.

19.     By the letter dated July 3, 2014 (Exhibit B), FCNM gave formal notice to Covington of FCNM's request for mediation of the disputes summarized in its request, pursuant to Section 14.8 of the Operating Agreement. Thereafter, Covington failed and refused to resolve the summarized disputes by mediation per the Operating Agreement; and FCNM has invoked arbitration, as authorized under the Operating Agreement, by this formal Notice of Intent to Arbitrate. Concurrent with service of this Notice, FCNM has also submitted to Covington FCNM's list of five (5) qualified and disinterested arbitrators (attached as Exhibit J) as prescribed in the Operating Agreement.

## FIRST CLAIM FOR RELIEF
### (Specific Performance)

20.     Claimant and Respondent entered into the Operating Agreement on or about September 26, 2006.

21.     Claimant tendered its Buy/Sell Offer (offering to sell FCNM's Interest) to Respondent on or about May 5, 2014, in accordance with all provisions of the Operating Agreement.

22.     Respondent failed to timely and irrevocably accept the Buy/Sell Offer, and was thereafter, by express requirement of the Operating Agreement, deemed to have irrevocably elected to sell Respondent's Interest to the Claimant.

23.     Notwithstanding the delivery of written notice by Claimant to Respondent of the obligations to sell on a prescribed Closing date, Respondent has refused to accept the Buy/Sell Offer tender, and failed and refused to make the required conveyance at the prescribed Closing.

24.     FCNM reaffirms its Buy/Sell Offer, including its tender of the Designated Price and terms of sale as prescribed therein.

25.     The Operating Agreement expressly authorizes an award of specific performance to FCNM. Specifically, Section 14.9(f) of the Operating Agreement provides that "Subject to the limitations set forth in this Agreement, the arbitrator shall apply New Mexico law and shall

have the authority to award . . . specific performance of any obligation created under the Agreement . . . ."

26. FCNM is entitled to specific performance of Respondent's obligations for transfer of its Interest in FCC Manager at Closing as prescribed by the Operating Agreement, and to an order compelling Respondent to do precisely what it ought to have done without being coerced by an adjudicatory process. *McCoy v. Alsup*, 1980-NMCA-035, 94 N.M. 255.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Contract/Malicious Abuse of Process)

27. The plain language of the Operating Agreement precludes arbitration of a Deadlock without consent of each of the Members of FCC Covington.

28. FCNM elected the Buy-Out provisions of the Operating Agreement for resolution of the Deadlock identified in its notice dated April 15, 2014 (Exhibit C) and its Buy/Sell Offer (Exhibit D); and on June 27, 2014 FCNM gave timely written notice to Covington of Claimant's refusal to consent to arbitration of the identified Deadlock and any/all related issues (Exhibit H).

29. Notwithstanding the written notice and objection of FCNM, Covington has pursued and continues to pursue arbitration of the Deadlock and the Buy/Sell Offer (and judicial adjudication of Member disputes, in the U.S. District Court for the District of New Mexico) in direct violation of the Operating Agreement.

30. Covington's continued pursuit of claims for arbitration respecting the Deadlock is a knowing and intentional breach and wrongful manipulation of the plain language of the Operating Agreement, and violates the clear intent of the parties. FCNM has suffered actual damage (for additional costs and attorneys' fees) because of the wrongful and intentional conduct of Covington.

31. Punitive damages are available under New Mexico law where one party to a contract breaches the terms thereof with wrongful or malicious intent, with reckless disregard for the rights of or harm to the other party, or otherwise intentionally abuses a prescribed contractual or statutory process for a wrongful or illegitimate purpose, such as delay or harassment. *Cafeteria Operators, L.P. v. Coronado-Santa Fe Associates, L.P.*, 952 P.2d 435 (1998).

32. Claims for malicious abuse of process may be asserted in New Mexico arbitration proceedings (*Durham*, 2009-NMSC-007); and the facts alleged here, and to be presented at arbitration hearing(s), establish that Respondent has maliciously abused the agreed contractual process by overt disregard for, and intentional delay of the prescribed Deadlock resolution and Buy-Out processes.

33. Claimant is entitled to recover punitive damages and other appropriate sanctions from Covington for malicious abuse of process and/or bad faith breach of contract.

WHEREFORE, Claimant FCNM demands:

A.  That Respondent Covington be required to specifically perform the Operating Agreement respecting conveyance of its Interest in FCC Manager at a designated date for Closing;

B.  That FCNM be granted other damages as established by the evidence;

C.  That FCNM be granted punitive damages in an amount to be determined by the arbitrator; and

D.  That FCNM be awarded its attorneys' fees and costs as provided for in the Operating Agreement.

Respectfully submitted this 23rd day of July, 2014.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: _____
Hubert A. Farbes, Jr., Colorado Registration #6353
Jonathan G. Pray, Colorado Registration #36576
410 17th Street, Suite 2200
Denver, Colorado 80202

ATTORNEYS FOR FOREST CITY NM, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2014, I served a true and correct copy of the foregoing **FCNM'S NOTICE OF INTENT TO ARBITRATE** upon the following in the manner indicated:

**By Certified Mail, return receipt requested:**

Covington NM, LLC
8300 West Sahara Ave, Suite 230
Las Vegas, NV  89117


**By Electronic Mail & Certified Mail, return receipt requested:**

W. Spencer Reid
Gary J. Van Luchene
KELEHER & McLEOD, P.A.
Post Office Box AA
Albuquerque, NM  87103
Telephone: 505.346.4646
Emails: sr@keleher-law.com; gvl@keleher-law.com
*Counsel of Record for Respondent Covington NM, LLC*


                          _s/Penny G. Lalonde_
                          Penny G. Lalonde, Paralegal