# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**COVINGTON NM, LLC,**
a Nevada limited liability company,

**Plaintiff,**

**v.**                                                                    **CIV No. 14-615 LH/WPL**

**FOREST CITY NM, LLC,**
a New Mexico limited liability company,

**Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Forest City NM, LLC's Motion to Dismiss (ECF No. 16). Specifically, Defendant Forest City NM, LLC ("Forest City") seeks to dismiss the First Amended Complaint to Compel Arbitration or, Alternatively, for Declaratory Relief (ECF No. 13, "FAC"). The Court, having considered the motion and briefs filed in support and in opposition thereto, as well as relevant caselaw, and being otherwise fully advised, concludes that the motion is not well taken and will be **denied**.

## I.  Procedural Background

On July 3, 2014, Plaintiff Covington NM, LLC ("CNM") filed its original Complaint to Compel Arbitration or Alternatively for Declaratory Relief (ECF No. 1). Three weeks later, Forest City filed its initial motion to dismiss (ECF No. 9). The same day, Forest City filed its Answer to the Complaint (ECF No. 10). On August 1, 2014, as allowed by FED.R.CIV.P.

1

15(a)(1)(B), CNM filed its First Amended Complaint to Compel Arbitration or, Alternatively, for Declaratory Relief (ECF No. 13, "FAC")).  On August 7, 2014, Forest City filed its motion to dismiss the FAC (ECF No. 16), attaching eleven (11) exhibits.  On August 18, 2014, Forest City filed its Motion to Compel Arbitration and for the Appointment of an Arbitrator (ECF No. 18), and on August 25, 2014, CNM filed its Motion to Compel Arbitration (ECF No. 21).  Forest City filed a Motion for Sanctions Pursuant to FED.R.CIV.P. 11 (ECF No. 24) on September 6, 2014.

**II.  Overview of Forest City's Motion to Dismiss**

In its FAC, CNM characterizes this as a dispute concerning the invocation of an arbitration provision contained in an Operating Agreement entered into by the parties and seeks the appointment of an arbitrator from a list of arbitrators it has proposed.  Specifically, CNM seeks an order compelling arbitration of the underlying dispute, pursuant to 9 U.S.C. § 4, as well as an order confirming its selection of Kerwin Hollowwa as arbitrator.  CNM contends that the arbitrability of the validity of a buy-out offer from Forest City is what is at issue in this litigation.

Defendant Forest City's position in its motion to dismiss is that this case is really about a mechanism, different from that of arbitration, for resolving a disagreement between the parties that has resulted in a "deadlock" between the parties.  Specifically, Forest City contends that because a "deadlock" has occurred, the parties are compelled to participate in a dispute resolution process known in the real estate industry as a "shotgun buy-sell," pursuant to certain provisions in the Operating Agreement.  Forest City denies the allegations in the FAC and states that they are "demonstrably false" and "knowing misrepresentations."  In addition to disputing the accuracy of the allegations, Forest City argues that Count I of the FAC should be dismissed for two reasons:  (1) because CNM's claim could not become ripe for arbitration until

completion of the "buy-out process"; and, (2) because Forest City has not in fact refused to participate in arbitration.  Forest City argues that Count II of the FAC should be dismissed because it violates requirements of the Operating Agreement.

### III.  Legal Standards for Motion to Dismiss

The legal sufficiency of a complaint is a question of law.  For purposes of resolving a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations in the complaint and views these allegations in the light most favorable to the plaintiff.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999)(internal quotation omitted).  In so doing, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)).  The *Twombly* Court explained that "a plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss."  *Twombly,* 550 U.S. at 549.  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C.,* 493 F.3d at 1177.

In evaluating a Rule 12(b)(6) motion, generally the sufficiency of a complaint must rest on its contents alone. *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010).[1]  In this case,

---

[1] The *Gee* Court set out the limited exceptions to this restriction as to what the Court can consider in a Rule 12(b)(6) ruling, which include:  documents that the complaint incorporates by reference, documents referred to in

neither the original complaint nor the FAC attached any exhibits.  The FAC mentions and quotes from the Operating Agreement and its two amendments.  As already noted, in support of its motion to dismiss, Forest City submitted eleven (11) exhibits, including the Operating Agreement and its two amendments (Ex. 16-1), to the extent they are mentioned in the FAC.  In making this ruling, in its discretion, the Court will consider no documents outside the pleadings, with the exception of the Operating Agreement and its two amendments.[2]  Otherwise, the Court will accept CNM's allegations as being true and will view these allegations in the light most favorable to CNM, the Plaintiff.  By taking this approach, the Court avoids converting Forest City's motion into a request for summary judgment under Rule 56.

## IV.  Allegations of the FAC

The FAC makes the following relevant and material allegations:

1.  Plaintiff CNM is a limited liability company formed and registered to do business under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada. (FAC ¶ 1).

2.  Defendant Forest City is a New Mexico limited liability company formed and registered to do business under the laws of the State of New Mexico, with its principal place of business in Albuquerque, New Mexico.  (*Id.* ¶ 2).

---

the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and matters of which a court may take judicial notice.  *Gee,* 627 F.3d at 1186.  In the discretion of the Court, these exceptions may be employed without converting the motion to dismiss to a motion for summary judgment.

    [2] The Court notes it is accepted practice that, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384 (10th Cir. 1997), *quoted in Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *See GFF Corp.,* 130 F.3d at 1385.

3.  CNM and Forest City each own a 50 percent interest in FCC-Manager.  (*Id.* ¶ 8).

4.  FCC-Manager is the sole and managing member of Forest City Covington, NM, LLC, a New Mexico limited liability company.  (*Id.* ¶ 9).

5.  The business of Forest City Covington NM, LLC, is to manage and operate Mesa Del Sol, LLC, an entity involved in the Mesa del Sol real estate development project in southeast Albuquerque, New Mexico.  (*Id.* ¶ 10).

6.  The parties entered into the Operating Agreement of FC Covington Manager, LLC ("Operating Agreement"), which was signed on September 26, 2006.  The Operating Agreement has been amended twice.  The Operating Agreement, as amended, contains a buy-out provision and provides for arbitration of certain disputes between members.  (*Id.* 11).

7.  A dispute has arisen between the parties concerning the efficacy of Forest City's attempt to invoke the subject buy-out provision.  (*Id.* ¶ 12).

8.  The arbitration agreement in the Operating Agreement broadly permits (and requires) the arbitration of "[a]ny dispute between the Members with respect to any matter pertaining to this Agreement which has been re-directed pursuant to the [mediation provision] and which is not otherwise subject to buy-out . . . ."  (*Id.* ¶ 13).

9.  Under the Operating Agreement, the underlying dispute regarding the efficacy of Forest City's purported buy-out offer is subject to arbitration in New Mexico.  It requires the parties to pursue mediation before invoking arbitration.  (*Id.* ¶¶ 14, 15).

10. The underlying dispute between the parties concerns a "buy-out" provision contained in the September 30, 2008 first amendment to the Operating Agreement.  (*Id.* ¶ 16).

11. The FAC outlines circumstances under which the "buy-out" provision becomes operable and how it operates.  (*Id*. ¶¶ 17-19).

12.   In May 2014, Forest City mailed to CNM a purported offer to sell under the Operating Agreement.  The terms of this purported offer did not comply with the buy-out provision.  (*Id.* ¶ 20).

13.   On June 11, 2014, CNM received a letter from Forest City, purporting to invoke the buy-out provision, based on CNM's unwillingness to accept Forest City's offer to sell. (*Id.* ¶ 21).

14.   Forest City's offer to buy was invalid and inoperative under the Operating Agreement and thus does not invoke a contractual obligation to either buy or sell an interest in FCC-Manager.  Forest City disagrees with this conclusion, and demands the opportunity to purchase CNM's interest in FCC-Manager, without first determining, via arbitration or litigation, whether the offer is a proper invocation of the buy/sell provisions in the Operating Agreement. (*Id.* ¶ 22).

15.   On June 9, 2014, CNM wrote a letter to Forest City, objecting to the buy-out offer, offering mediation, and notifying Forest City of its intention to arbitrate the validity of the offer if mediation was unsuccessful.  (*Id.* ¶23).

16.   Forest City responded on July 13, 2014, by "elect[ing] not to respond to, and to disregard" the June 9, 2014 letter.  (*Id.* ¶ 24).

17.   On June 18, 2014, CNM sent a letter to Forest City, confirming Forest City's refusal to participate in mediation.  Forest City did not dispute the confirmation.  (*Id.*).

18.   CNM, pursuant to the Operating Agreement, served its Notice of Intent to Arbitrate Dispute and Arbitration Demand ("Notice") upon Forest City, effective June 18, 2014.  (*Id.* ¶ 25).

19.   On June 26, 2014, pursuant to the arbitration provision in the Operating Agreement, CNM provided a list of five potential arbitrators to Forest City.  (*Id.* ¶ 26).

20.  On June 27, 2014, Forest City responded, stating that it would not participate in the arbitration requested by CNM, asserting that the Operating Agreement did not provide or allow for arbitration under the circumstances, that CNM's request for arbitration "constitutes a bad faith violation" of the Operating Agreement, and that Forest City NM "does not agree, consent or accede to the Notice." (*Id.* ¶ 27).

21.  This letter from Forest City was a refusal to arbitrate matters raised in CNM's Notice.  (*Id.* ¶ 28).

22.  Forest City objected to the panel of potential arbitrators proposed by CNM.  (*Id.* ¶ 30).

23.  On July 30, 2014, CNM designated attorney Kerwin Hollowwa as the arbitrator for its proceeding.  (*Id.* ¶ 32).

24.  On July 30, 2014, Forest City served its own Notice of Intent to Arbitrate involving the same issues, and served a list of potential arbitrators.  (*Id.* ¶ 33).

25.  CNM rejected Forest City's effort to initiate a second, duplicative arbitration.  (*Id.* ¶ 35).

## A.  Specific Allegations of Count I

Count I of the FAC (*Id.* ¶¶ 36-40) is entitled "Request for Order Compelling Arbitration." Paragraph 37 of the FAC states:  "Section 14.9(a) of the Operating Agreement, in pertinent part, requires the arbitration of '[a]ny dispute between the Members with respect to any matter pertaining to this Agreement [for which mediation was not successful] and which is not subject to the buy-out pursuant to Section 14.10.' "  Count I further alleges that Forest City declined mediation and refused to arbitrate the matters raised in CNM's Notice, on the grounds that none

of the matters raised in the Notice was subject to arbitration under the Operating Agreement. CNM claims that Forest City's action was done despite the existence of a valid written arbitration agreement, that it was done in breach of its duties under the Federal Arbitration Act, and that accordingly it is entitled to an order compelling arbitration of the dispute pursuant to 9 U.S.C. § 4.  (*Id.* ¶ 38).  Count I further seeks an order confirming its selection of Kerwin Hollowwa as arbitrator.  (*Id.* ¶ 39).  Finally, Count I claims that Forest City's efforts in initiating duplicative arbitration proceedings were undertaken in bad faith, and that its Notice of Intent to Arbitrate should be consolidated into the first arbitration, by order of this Court.  (*Id.* ¶ 40).

### B. Specific Allegations of Count II

Count II of the FAC (*Id.* ¶¶ 41-43) is entitled "Alternative Request for Injunctive Relief." In this Count, CNM  asks for relief, in the event that the Court concludes that the matters raised in the arbitration requested by CNM are not arbitrable.  Specifically, CNM seeks declaratory relief in the form of:  (1)  an order declaring that Forest City's May 5, 2014 offer is non-conforming, and thus invalid and inoperable, under the Operating Agreement (*Id.* ¶ 42(a));   (2) an order declaring Forest City's purported election to purchase CNM's interest to be invalid, void and inoperable (*Id.* ¶ 42(b)); and in the alternative, (3) a declaration that, in the event the Court finds that Forest City's offer is in compliance with the Operating Agreement, and therefore valid, that the effective date of the offer will be the date of service of the Court's final order herein. (*Id.* ¶ 43).

## V.  Law Applicable to Counts I and II

Count I alleges that Forest City declined mediation and refused to arbitrate the matters raised in CNM's Notice and requests an order compelling arbitration.  CNM claims that Forest City's refusal was in violation of a valid written arbitration agreement, that it was taken in breach of its duties under the Federal Arbitration Act, and that accordingly, CNM is entitled to an order compelling arbitration of the dispute pursuant to 9 U.S.C. § 4.  (*Id.* ¶ 38).

The Federal Arbitration Act ("FAA") provides:

A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

As already noted, CNM seeks an order compelling arbitration of matters raised in its Notice, pursuant to 9 U.S.C. § 4.  Section 4 provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction … in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement… The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

## VI.  Analysis

The FAC alleges that the Operating Agreement, as amended, contains an arbitration clause.  This gives rise to "a presumption of arbitrability," particularly where broad language is used in the provision.  *See ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (compelling arbitration where subject agreements called for arbitration of "all 'disputes' "

and "any matter in dispute").  A party opposing arbitration can overcome this presumption only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.* (quoting *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986)).  All doubts should be resolved in favor of arbitration, and courts are to "rigorously" enforce agreements to arbitrate. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987).

A court must initially evaluate whether a party is bound by a contractual duty to arbitrate before compelling arbitration.   "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."  *AT & T Technologies, Inc.,* 475 U.S. at 648 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).  The issue of arbitrability is for judicial determination because no party has to arbitrate a dispute unless it has consented thereto.  *See Oil, Chemical & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co.*, 528 F.2d 252, 254 (10th Cir. 1976).  *See also, AT & T Technologies, Inc.,* 475 U.S. at 649.

The FAC raises the issue of arbitrability, specifically as to whether, pursuant to the arbitration provision contained in the Operating Agreement, Forest City must submit to arbitration for matters raised in CNM's Notice, and if not, whether CNM is entitled to the alternative relief sought in the FAC.  As noted above, these types of issues are properly decided in the district court.[3]

---

[3] Conversely, because it is not within the purview of this Court to evaluate the *merits* of the underlying dispute, much of Forest City's arguments are inapposite to analysis of the pending motion.  Indeed, Forest City's motion to dismiss is largely focused on the merits of the case, as opposed to the legal sufficiency of the FAC, under Rule 12(b)(6).  For example, Forest City argues that CNM has misconstrued the dispute resolution provisions of the Operating Agreement.  Success of Forest City's arguments would require legal analysis by the Court of the provisions of the Operating Agreement, as well as of the merit of Forest City's position that CNM's claim for arbitration cannot be ripe until completion of the Buy-Out process.  Forest City requests that the Court make factual determinations as to what procedural steps the parties have taken, including a factual determination by the Court that Forest City has not refused to participate in arbitration.  (Mot. Dismiss at 7).  The Court rejects this fact-based

The FAC contains considerable detail regarding Forest City's attempt to exercise a buy-out option contained in the Operating Agreement.  CNM's specific factual allegations entitling it to relief are outlined in Section IV herein.  Based on these allegations, the Court concludes that CNM has a reasonable likelihood of mustering factual support for its claims, and therefore, that the FAC states a claim for relief that is plausible on its face.  Specifically, CNM's allegations state a claim for relief under 9 U.S.C. § 4, for a decision as to whether or not it is entitled to arbitration of the dispute described in the FAC, and, if so, whether or not the Court should appoint an arbitrator.  Taken as true, the allegations in the FAC give rise to a plausible claim for an order compelling Forest City to arbitrate in the proceeding initiated by CNM, and for an order appointing an arbitrator as requested.  CNM is properly invoking the power of this Court to determine whether the issue is arbitrable under the arbitration clause, and has adequately stated a claim for such relief.

**WHEREFORE,** for the reasons stated herein,

**IT IS HEREBY ORDERED** that Defendant Forest City NM, LLC's Motion to Dismiss (ECF No. 16) is hereby **denied.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**

---

approach for at least two reasons.  First of all, as noted above, the Court has refused to consider either the Operating Agreement in its entirety, outside of the allegations of the FAC, or other documents produced by Forest City, for purposes of deciding this motion.  Secondly, at this juncture, it is inappropriate for the Court to make factual determinations, such as whether or not Forest City has refused to participate in arbitration, under Rule 12(b)(6).