IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**COVINGTON NM, LLC,**
a Nevada limited liability company,

        **Plaintiff,**

v.                                                                  CIV No. 14-615 LH/WPL

**FOREST CITY NM, LLC,**
a New Mexico limited liability company,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on motions to compel arbitration filed by each party. The titles of these motions are: Defendant Forest City NM, LLC's Motion/Petition to Compel Arbitration and for the Appointment of an Arbitrator (ECF No. 18), and Covington NM, LLC's Motion to Compel Arbitration (ECF No. 21). The Court, having considered the motions and briefs filed in support and in opposition thereto, as well as relevant caselaw, and being otherwise fully advised, concludes that the motions are **granted insofar as arbitration is compelled,** as explained more fully below, with the parties hereby ordered to proceed to arbitration in accordance with the terms of the Operating Agreement entered into by the parties. Furthermore, the Court concludes that Defendant Forest City NM, LLC's Motion for Sanctions Pursuant to Fed.R.Civ. P. 11 (ECF No. 24) is hereby **denied.** All pending matters now having been resolved, this case is hereby **dismissed with prejudice.**

## I. Procedural Background

On July 3, 2014, Plaintiff Covington NM, LLC ("CNM") filed its Complaint to Compel Arbitration or Alternatively for Declaratory Relief (ECF No. 1). Three weeks later, Defendant Forest City NM, LLC ("Forest City") filed a motion to dismiss (ECF No. 9). The same day, Forest City filed its Answer to the Complaint (ECF No. 10). On August 1, 2014, as allowed by FED.R.CIV.P. 15(a)(1)(B), without leave of Court, Forest City filed its First Amended Complaint to Compel Arbitration or, Alternatively, for Declaratory Relief (ECF No. 13, "FAC")). On August 7, 2014, Forest City filed a motion to dismiss the FAC (ECF No. 16), attaching eleven (11) exhibits in support thereof. On August 18, 2014, Forest City filed its Motion to Compel Arbitration and for the Appointment of an Arbitrator (ECF No. 18), and on August 25, 2014, CNM filed its Motion to Compel Arbitration (ECF No. 21). Forest City filed a Motion for Sanctions Pursuant to FED.R.CIV.P. 11 (ECF No. 24) on September 6, 2014. Prior to entry of this Memorandum Opinion and Order, the Court entered a ruling denying Defendant Forest City NM, LLC's ("Forest City's") motion to dismiss the FAC.

## II. Overview of Motions to Compel Arbitration

### A. Underlying Relevant Facts According to CNM/Content of Its Notice of Intent to Arbitrate

As noted in the Court's ruling on the motion to dismiss, CNM contends that it properly initiated the arbitration process first, by serving its Notice of Intent to Arbitrate Dispute and Arbitration Demand ("CNM Notice"), effective June 18, 2014, regarding the validity of Forest City's purported invocation of a "buy-out" provision in the Operating Agreement.

In support of its motion to compel arbitration, in addition to relying on allegations in the FAC, CNM refers the Court to three documents that Forest City submitted in support of its

motion to dismiss (Exs. 16-1, 16-2 and 16-3), as well as eight (8) exhibits,[1] attached to CNM's Response in Opposition to Forest City NM, LLC's Petition to Compel Arbitration (ECF No. 19).

CNM relies upon such facts as its June 9, 2014 correspondence to Forest City, in which CNM objected to Forest City's May 5, 2014 buy-out offer as being noncompliant with the Operating Agreement, offered mediation, and notified Forest City of its intention to arbitrate the validity of the offer if mediation was not successful. (Ex. 19-2). CNM asserts that, by letter of June 13, 2014, Forest City "elect[ed] not to respond to, and to disregard" the June 9, 2014 letter. (Ex. 19-3). To confirm that Forest City was refusing to participate in mediation, CNM sent a letter to Forest City on June 18, 2014. (Ex. 19-4). Receiving no word that Forest City wished to mediate, CNM served its Notice of Intent to Arbitrate Dispute and Arbitration Demand upon Forest City on June 18, 2014. (Ex. 19-5). In Paragraph 1 of its notice, CNM stated that "this dispute involves [Forest City's] ineffective attempt to invoke a membership buy-out provision contained in the [Operating Agreement]." Paragraph 6 of the notice states that the "Operating Agreement, as amended, provides for arbitration of certain disputes between members." Paragraph 7 states that the "dispute between the parties, being the efficacy of [Forest City's] attempt to invoke the subject buy-out provision, is subject to arbitration in New Mexico." The buy-out provision in the Operating Agreement relied upon by CNM is Section 14.10. CNM's notice seeks specific declaratory relief from an arbitrator, to the effect that: (a) Forest City's May 5, 2014 offer is non-conforming, and thus invalid and inoperable, under the Operating

---

[1] These exhibits are: Ex. 19-1: Amendment to the Operating Agreement of FC Covington Manager, LLC, dated September 30, 2008; Ex. 19-2: June 9, 2014 letter from CNM counsel Spencer Reid to Forest City requesting mediation; Ex. 19-3: June 13, 2014 letter from Forest City counsel Hubert Farbes to CNM indicating that Forest City elects not to respond to, and rather to disregard, CNM's June 9, 2014 letter; Ex. 19-4: June 18, 2014 letter from Spencer Reid to Hubert Farbes; Ex. 19-5: June 17, 2014 letter from Spencer Reid to Forest City and FC Mesa, Inc, attaching CNM's Notice of Intent to Arbitrate Dispute and Arbitration Demand; Ex. 19-6: CNM's June 25, 2014 submission to Forest City of a list of proposed arbitrators; Ex. 19-7: June 27, 2014 letter from Forest City counsel Hubert Forbes to CNM, giving notice that Forest City does not agree, consent or accede to CNM's Notice; Ex. 19-8: Forest City's July 7, 2014 Notice of Objection to CNM's List of Proposed Arbitrators.

Agreement; and, (b) Forest City's purported election of a closing date of June 27, 2014 is invalid, void and inoperable.[2]

After service of its notice, CNM provided a list of five potential arbitrators to Forest City. (Ex. 19-6). On June 27, 2014, Forest City sent a letter, refusing to participate in the arbitration initiated by CNM (Ex. 19-7). On July 30, 2014, CNM served its Designation of Arbitrator (Ex. 18-8), naming Kerwin Hollowwa, who was not on Forest City's list, as its designated arbitrator.

**B. Underlying Relevant Facts According to Forest City/Content of Its Notice of Intent to Arbitrate**

Forest City was the second of the parties to seek arbitration, serving its notice of intent to arbitrate on CNM on July 23, 2014. In addition to relying on allegations in the FAC, Forest City refers the Court to eight (8) exhibits attached to its motion to compel arbitration.[3] Forest City's position is as follows: on May 5, 2014, after notice of an offer to mediate a "deadlock," Forest City submitted a buy/sell offer to CNM, offering to sell all of Forest City's interest in FC Covington Manager, LLC, for a designated price and upon certain terms. (FAC ¶ 20; Ex. 18-2). The designated price was determined in accord with § 14.10.1 of the Operating Agreement (Ex. 18-1). CNM did not, within thirty days of its receipt of this buy/sell offer, elect to purchase Forest City's interest at the designated price and for the specified terms. (FAC ¶¶ 19-20).

---

[2] In the alternative, if the arbitrator finds that Forest City's offer was in compliance with the Operating Agreement and effective, CNM requests that the arbitrator declare the effective date of the offer to be upon the date of service of the arbitrator's final award.

[3] These exhibits are: Ex. 18-1: Second Amendment to Operating Agreement of FC Covington Manager, LLC, dated April 30, 2013, Amendment to the Operating Agreement of FC Covington Manager, LLC, dated September 30, 2008, and Operating Agreement of FC Covington Manager, LLC, dated August 10, 2007; Ex. 18-2: May 5, 2014 letter constituting Forest City's offer to sell all of its interest in FC Covington Manager, LLD (the "Buy/Sell offer"); Ex. 18-3: July 11, 2014 letter constituting Forest City's notification that it deemed CNM to have irrevocably elected to sell its interests in FC Covington Manager, LLC; Ex. 18-4: July 1, 2014 letter from Forest City, notifying CNM that it is in default of its obligation to close the Buy/Sell Offer pursuant to the Operating Agreement; Ex. 18-5: Forest City's July 3, 2014 Request for Mediation; Ex. 18-6: Forest City's Notice of Intent to Arbitrate, dated July 23, 2014; Ex. 18-7: Forest City's Designation of Qualified Arbitrators; and, Ex. 18-8: Forest City's Designation of Arbitrator, dated July 30, 2014.

On June 11, 2014, Forest City notified CNM that, because CNM had not accepted the May 5, 2014 buy/sell offer within thirty days of receipt, pursuant to the Operating Agreement, CNM was deemed to have elected to sell its interest in FC Covington Manager, LLC to Forest City at the designated price and upon the terms specified in the May 5 letter. (FAC ¶21; Ex. 18-3). Further, Forest City informed CNM that, pursuant to Section 14.10.3 of the Operating Agreement (Ex. 18-1), and as purchaser under the Operating Agreement, Forest City was providing at least fifteen days prior written notice of the date for closing of the buy-out transaction, and, accordingly Forest City set the closing date as June 27, 2014. (FAC ¶ 21; Ex. 18-3). CNM did not appear at the June 27, 2014 Closing (FAC ¶ 22).

On July 1, 2014, Forest City formally notified CNM that it was in default of its obligations to close a buy-out transaction. (Ex. 18-4). By letter dated July 3, 2014, Forest City formally notified CNM of Forest City's request for mediation of disputes as summarized in that letter. (Ex. 18-5). The parties participated in a mediation process but failed to resolve these disputes.

On July 23, 2014, Forest City served upon CNM a Notice of Intent to Arbitrate (Ex. 18-6), concurrently submitting a list of five proposed arbitrators. (Exs. 18-7, 16-10). Summarizing its disputes and claims, Forest City states that it "invokes arbitration to enforce the obligations of [CNM] pursuant to the Buy-Out provisions of the Operating Agreement (Section 14.10), including [CNM's] obligation for specific performance of said obligations, and to recover damages under New Mexico law for [CNM's] bad faith breach of contract and/or malicious abuse of process respecting terms of, and duties and obligations prescribed by the Operating Agreement." (Ex. 18-6, ¶ 1).

Forest City's first claim for relief in its notice is that it tendered its buy/sell offer, offering to sell its interest to CNM, on May 5, 2014, in accordance with the Operating Agreement (*Id.* ¶ 21); that CNM failed to timely and irrevocably accept the Offer, and thereafter, by express requirement of the Operating Agreement, is deemed to have irrevocably elected to sell CNM's interest to Forest City (*Id.* ¶ 22); that CNM has refused to accept the buy/sell offer, and failed and refused to make the required conveyance at closing (*Id.* ¶ 23); and that Forest City is entitled to an award of specific performance, as ordered by an arbitrator, under New Mexico law pursuant to Section 14.9(f) of the Operating Agreement (*Id.* ¶ 25).

Forest City's second claim is that CNM's intentional delay of the deadlock resolution and buy-out processes constitute a bad faith breach of the Operating Agreement and a malicious abuse of process – claims that may be asserted in New Mexico arbitration proceedings. (Id. ¶ 32).

**C. Summary of the Two Notices of Intent to Arbitrate**

The Court has set forth the relevant substance of the two notices that the parties tendered to each other. CNM's notice was served on June 18, 2014 and Forest City's notice was served on July 23, 2014. A comparison of these two notices indicates that in essence they present the same issues for resolution, namely the determination of the rights and obligations of the parties under the Operating Agreement, specifically pertaining to a buy/sell offer made by Forest City on May 5, 2014.

**III. Legal Standard and Analysis**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, *et seq.*, governs any written arbitration clause in a "contract evidencing a transaction involving commerce," and creates a strong federal policy favoring the enforcement of arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). Under that policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25.

Because the parties agreed that the interpretation and performance of the Operating Agreement would be governed by New Mexico law[4], the New Mexico Uniform Arbitration Act ("NMUAA"), NMSA 1978 §§ 44-7A-1 to 32 (2007), also applies to the extent that it is not inconsistent with the FAA.

In determining whether the motions to compel arbitration should be granted, the Court must bear in mind the language of two applicable statutes. First of all, the Court notes the language of 9 U.S.C. § 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction … in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement… The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Section 44-7A-8(a) sets out this standard:

(a) On a motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
> (1) if the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and

---

[4] *See* Exs. 18-1 and 19-1, Operating Agreement ¶ 14.6 ("This instrument shall be governed by and construed in accordance with the laws of the State of New Mexico.")

(2) if the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

## A. There Is A Valid and Enforceable Agreement to Arbitrate As Well as an Arbitrable Dispute

A court must initially evaluate whether a party is bound by a contractual duty to arbitrate before compelling arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)(quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). It is the province of the court (and not that of an arbitrator) to determine whether a party has a duty to arbitration. *AT & T Technologies, Inc.,* 475 U.S. at 649.

In evaluating whether the parties are bound by a contractual duty to arbitrate, the Court notes that CNM has alleged and acknowledged that the Operating Agreement contains a binding agreement to arbitrate (FAC ¶¶ 36-40) and this is not disputed by Forest City. Reading the parties' briefs as a whole, the Court concludes that they agree to the following: that the Operating Agreement arbitration provisions are clear and unambiguous; the disputes raised in each of the parties' notice of intent to arbitrate are arbitrable under the terms of those provisions (*i.e.,* that the transaction at issue – the invocation of the buy-out clause by Forest City -- is covered by the arbitration clause); and that this Court has the power to, and should, appoint an arbitrator to resolve the disputes set forth in these notices. Necessary to each of the parties' respective motions to compel arbitration is the cognizance by each party that it is bound by the arbitration provisions contained in the Operating Agreement, and that such provisions apply to the underling dispute.

Having reviewed the Operating Agreement and its two amendments, the Court concurs that the parties are duty bound to arbitrate this matter. The Operating Agreement permits a party to initiate an arbitration proceeding to resolve "any dispute between the Members with respect to" the Operating Agreement, other than those disputes otherwise subject to the buy-out provision. Operating Agreement at § 14.9.

Accordingly, the language of the Operating Agreement gives rise to a "presumption of arbitrability," in light of the broad language employed. *See ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir. 1995)(compelling arbitration where subject agreements called for arbitration of "all 'disputes' " and "any matter in dispute"). Clearly, the issues framed by both parties in their respective notices of intent to arbitrate constitute "dispute[s] between the Members with respect to" the Operating Agreement. At minimum, it cannot be said with "positive assurance" that the arbitration clause does not cover this dispute, as is required under the Tenth Circuit's holding in *ARW*. The arbitration provisions in the Operating Agreement are very broad, giving rise to the presumption described by the Tenth Circuit in *ARW*. Both notices relate to the same transaction, namely, the invocation of the buy-out agreement by Forest City.

Absent a finding that the parties are bound by a contractual duty to arbitrate the dispute in question, the Court cannot compel the parties to submit to arbitration. Having reviewed the pertinent contractual language, the Court is convinced that the parties have so agreed. The Court is therefore "satisfied that the making of the agreement for arbitration … is not in issue," for purposes of 9 U.S.C. § 4, and that the undisputed facts before the Court have "show[n] an agreement to arbitrate" for purposes of NMSA § 44-7A-8. Independently of the parties' failure to dispute the validity of this arbitration provision, the Court finds a legally binding contractual duty of the parties to arbitrate this dispute.

### B. The Parties Have Not Participated in Arbitration of this Dispute

Finally, it is clear from the record that the parties have not arbitrated this dispute in accordance with the Operating Agreement. CNM was the first to serve its notice of intent to arbitrate, effective June 18, 2014. (Ex. 16-5). On June 27, 2014, Forest City responded, stating that it would not participate in the arbitration requested by CNM, asserting that the Operating Agreement did not provide or allow for arbitration under the circumstances, that CNM's request for arbitration "constitutes a bad faith violation" of the Operating Agreement, and that Forest City "does not agree, consent or accede to the Notice." (Ex. 16-6). An arbitration pursuant to CNM's notice has not occurred. Similarly, the subject matter of Forest City's subsequent notice of intent to arbitrate indicates a dispute which is covered by the terms of the arbitration provisions in the Operating Agreement. An arbitration pursuant to Forest City's notice has not occurred.

The Court rejects both parties' refusal to comply with the terms of the Operating Agreement and hereby compels them to participate in a consolidated arbitration process, conducted by the arbitrator named below.

## IV. Consolidation

Both parties have suggested consolidation as an alternative to their preferred approach of proceeding to arbitration, solely on their respective notices of intent to arbitrate. The Court concludes that under the circumstances present in this matter, including the lack of opposition from either party, the NMAA permits consolidation of these two arbitration proceedings. According to § 44-7A-11(a), there may be consolidation where (1) there are separate arbitration proceedings between the same persons, (2) the claims subject to arbitration arise in substantial

part from the same transaction or series of related transactions, (3) common issues of fact or law create the possibility of conflicting decisions in separate arbitrations, and (4) prejudice resulting from a failure to consolidate is not outweighed by the risk of undue delay or prejudice to the party opposing consolidation. Because all of these factors have been satisfied, the Court concludes that the two notices of intent to arbitrate shall be consolidated.

### V. Appointment of Arbitrator

The parties appear to be in agreement that the Court should exercise its authority to appoint an arbitrator, immediately. Sections 14.9(c) and (d) of the Operating Agreement pertain to the selection process of an arbitrator. Section 14.9(c) indicates that, after initiating the arbitration process by serving written notice on the other party of its intention to arbitrate the dispute, the initiating party shall thereafter have ten (10) days to submit to the other a list of five (5) qualified and disinterested arbitrators. The party receiving the list shall have ten (10) days to select an arbitrator from the list. Section 14.9(d) states that the arbitrator must be a member of the State Bar of New Mexico actively engaged in the practice of real estate law, with expertise in the process of deciding disputes and interpreting contracts in the area of real estate and real estate development.

As already noted, both parties have served upon each other notices of intent to arbitrate as well as lists of potential arbitrators. CNM's notice was served on June 18, 2014. After service of its notice, CNM provided a list of five potential arbitrators to Forest City (Ex. 19-6). This list included the names of Kerwin Hollowwa, Tom Simons, Tim Sheehan, Jay Rosenblum and Mark Ish. On June 27, Forest City refused to participate in the arbitration initiated by CNM (Ex. 19-7), and did not select an arbitrator from CNM's list within the ten (10) day timeframe spelled out

11

in Section 14.9(c) of the Operating Agreement. On July 30, 2014, CNM designated attorney Kerwin Hollowwa as the arbitrator for its proceeding. (Ex. 18-8).

On July 23, 2014, Forest City served its own notice of intent to arbitrate. (Ex. 18-6), providing a list of five potential arbitrators to CNM on the same day. (Ex. 18-7). This list included the names of Leonard G. Espinosa, Leonard S. Katz, Jack P. Burton, Ruth N. Shifani, and Terry D. Farmer. CNM did not select an arbitrator from Forest City's list within the ten (10) day timeframe spelled out in Section 14.9 of the Operating Agreement.

The parties correctly note that pursuant to 9 U.S.C. § 5, under the circumstances in this case, the Court has the authority to appoint an arbitrator. Pursuant to that authority, consistent with the independent knowledge of the Court as to their qualifications, the Court hereby appoints Kerwin Hollowwa, to serve as arbitrator in this matter, and in the event that Mr. Hollowwa is unable to serve, the Court appoints Ruth Shifani to serve as arbitrator.

## VI. Forest City's Motion for Sanctions

Attorneys and litigants have an affirmative duty to make a reasonable investigation of the facts and the law before signing and submitting any pleading, motion, or other paper. *See* FED.R.CIV.P. 11. An attorney or party may be sanctioned for presenting a claim that does not have "evidentiary support." *Id.* at § (b)(3). The purpose of Rule 11 is to deter baseless filings and thereby streamline the administration and procedure of federal courts. Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.

In its motion, Forest City seeks sanctions against CNM, asserting that the FAC is based on two principal misrepresentations of fact and law: (1) that Forest City refuses to participate in

arbitration; and (2) that there is some set of facts that would give this Court (rather than an arbitrator) jurisdiction to resolve disputes between Forest City and CNM.

To provide an evidentiary basis as to the first assertion, CNM directs the Court to a June 27, 2014 letter from Hubert Farbes (Ex. 19-7). Specifically, CNM contends that this letter provides evidentiary support for the assertions in the FAC, ¶¶ 27 and 38, to the effect that Forest City would not willingly participate in the arbitration requested by CNM. The Court notes that Forest City subsequently filed its own demand for arbitration, seeking to enforce its alleged right to buy CNM's interest in the company, however the Court agrees with CNM that this does not change the fact that Forest City declined to participate in the arbitration requested by CNM. In short, the Court is not persuaded that CNM has made any "misrepresentation of fact" relating to Forest City's nonparticipation in arbitration, following service of CNM's notice of intent to arbitrate.

Next is Forest City's assertion that it is entitled to sanctions based on CNM's inclusion of an alternative claim for declaratory relief in Count II, ¶¶ 41-43 of the FAC. This alternative request for injunctive relief was asserted in the event that the Court concluded that the matters raised in the arbitration requested by CNM were held to be not arbitrable. Forest City contends that this is a bad faith assertion, of a matter that can only be decided by the arbitrator but not by this Court. The Court is not persuaded by Forest City's contention.

For the foregoing reasons, Defendant Forest City NM, LLC's Motion for Sanctions Pursuant to FED.R.CIV.P. 11 (ECF No. 24) is hereby **denied.**

VII. Conclusion

In filing this lawsuit, the relief CNM sought was an order compelling arbitration of the underlying dispute, as well as an order appointing an arbitrator. These issues have been resolved by the Court and nothing remains for further adjudication.

**WHEREFORE, IT IS HEREBY ORDERED** that this matter is **dismissed with prejudice.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**